IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JARED AND MYRANDA REDIGER; HAYSTORM HARVESTING & FIBER INC., | Case No. 6:16-cv-02263-AA **OPINION AND ORDER** |
| Plaintiff, | |
| vs. | |
| COUNTRY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

AIKEN, District Judge:

Defendant Country Mutual Insurance Company ("Country Mutual") filed this Motion for Partial Summary Judgment (doc. 93) as to claims brought against it by plaintiffs Jared Rediger, Myranda Rediger, and Haystorm Harvesting & Fiber, Inc. For the reasons stated herein, the motion is DENIED.

**BACKGROUND**

Haystorm Harvesting & Fiber, Inc. is a business owned by Jared and Myranda Rediger. In June 2014, the Redigers met with Country Mutual's insurance agent Bob Bronson ("Bronson") to apply for insurance coverage for their business property located in Linn County, Oregon, through Country Mutual. The Redigers filled out an

insurance application and gave Bronson a $5,000 check as a down payment on the premium. On December 6, 2014, a fire caused significant damage to plaintiffs' property. At that time, Bronson had not submitted the application or check to Country Mutual, and Country Mutual had not issued a written insurance policy.

Although no written policy had issued, plaintiffs reported the loss and Country Mutual accepted the claim. Country Mutual assigned one of its underwriters to work with Bronson to prepare a retroactive written policy based on the application materials. On January 7, 2015, the written policy issued, covering the period from June 2014 to June 2015. Gower Decl. (doc. 100) Ex. 2. With the help of a public adjusting company, plaintiffs claimed a loss of $2,518,746.63. *Id*. Ex. 11 at 2. Ultimately, Country Mutual paid plaintiffs $1,573,420.03. Am. Comp. (doc. 87) ¶ 25; Ans. (doc. 92) ¶ 16.

Plaintiffs filed this action, asserting a breach of contract claim against Country Mutual. Now Country Mutual moves for partial summary judgment. Doc. 93.

**STANDARDS**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a fact is determined by the substantive law on the relevant issue, while the authenticity of a dispute is determined by inquiring whether a reasonable jury could return a verdict for the nonmoving party in light of the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324; Fed. R. Civ. P. 56(e). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

Before turning to Country Mutual's motion, the Court will address an evidentiary dispute concerning the declaration of Jared Rediger (doc. 101), which plaintiffs offered with their Response (doc. 99). Country Mutual contends that the declaration contradicts Rediger's previous deposition testimony.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). This "sham affidavit rule prevents a party who has been examined at length on deposition from raising an issue of fact simply by submitting an affidavit contradicting his own prior testimony, which would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (cleaned up). District courts properly exclude a sham affidavit where "no juror would believe

[the declarant's] weak explanation for his sudden ability to remember the answers to important questions about the critical issues of his lawsuit." *Id*. at 1081.

"But the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Id*. at 1080 (quotation marks omitted). To exclude a declaration under this rule, the district court "must make a factual determination that the contradiction is a shame, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous." *Id*. (quotation marks omitted). The rule does not apply where "a deponent's memory could credibly have been refreshed by subsequent events, including discussions with others or his review of documents, record, or papers." *Id*.

Country Mutual contends that Jared Rediger's deposition testimony conflicts with statements from his declaration in two areas: (1) the details of plaintiffs' oral agreement with Bronson and (2) the component parts of the Total Mix Ration Machine destroyed in the fire. Reply (doc. 106) at 5. Having reviewed the declaration and the deposition testimony in context, the Court finds that, to the extent any inconsistency exits, it is not so "clear and unambiguous" that the court must find that Rediger's declaration is a sham. A party is not precluded from introducing additional information that seeks to explain prior statements. *Leslie v. Grupo ICO*, 198 F.3d 1152, 1158 (9th Cir. 1999). And "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding" an affidavit. *Messick v. Horizon Indus., Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995).

Thus, whether Rediger's declaration accurately describes the oral agreement with Bronson or the TMR Machine and its component parts is a question for the jury. The Court will not strike Rediger's declaration as a sham and will return to the merits of Country Mutual's motion for partial summary judgment.

Plaintiffs' breach of contract claim is premised on allegations that Country Mutual (1) failed to "issue a written Policy in conformance with the agreement [Country Mutual] made with Plaintiffs" and (2) failed "to pay Plaintiffs for losses covered under the insuring agreement." Am. Compl. ¶ 26. Country Mutual acknowledges that the Amended Complaint alleges "there were oral discussions between" the Redigers and Bronson "that were the basis of a contract." Mot. for Partial Summ. J. (doc. 93) at 16. But Country Mutual argues that Oregon's parol evidence rule and statute of frauds preclude these discussions from serving as a basis for recovery under the insurance policy. Country Mutual, as a threshold matter, seeks a ruling from this Court that the terms of the written policy are binding.

Plaintiffs respond that they allege a claim for breach of an oral insurance contract *and* an alternative claim for breach under the written policy. Defendants, in turn, reply that plaintiffs failed to allege the existence of an insurance contract in June 2014; that Oregon does not recognize oral insurance *contracts*, only oral insurance *binders*; that any oral binder between the Redigers and Bronson had expired by the time the fire happened; and that plaintiffs effectively seek reformation of the written contract, despite failing to plead that relief in their Amended Complaint.

Whether Oregon's Insurance Code, which was adopted by the Oregon legislature in 1967, prohibits oral insurance *contracts* while expressly authorizing oral insurance *binders* is immaterial here because plaintiffs sufficiently alleged the creation of an oral binder in June 2014 and showed that such binder could govern the insurance policy.[1]

A "binder" is a temporary insurance contract that remains effective until permanent insurance is approved or disapproved. *Baylor v. Continental Cas Co.*, 190 Or. App. 25, 33 (2003) (citing *United Pac. Ins. v. Truck Ins. Exch.*, 273 Or. 283, 289-90 (1975) (internal quotations omitted)). ORS 742.043(1) authorizes binders and provides

> Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable indorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.

Further, under Oregon law, every insurance contract must specify: (1) the names of the parties to the contract; (2) the subject of the insurance; (3) the hazards or perils insured against; (4) the time when the insurance takes effect and the period during which the insurance is to continue; (5) the premium; and (6) the conditions and provisions pertaining to the insurance. ORS 742.023(1). But a binder "need not contain all" these "necessary elements . . . so long as the protection for which the

---

[1] In fact, Oregon courts appear to treat oral binders and oral contracts as synonymous. In *Stuart v. Pittman*, 350 Or. 410, 416 n.4 (2011), a post-code decision, the Oregon Supreme Court observed that it had "held that an enforceable oral binder is created when the parties have agreed to" five elements. And the court cited *Cleveland Oil Co. v. Ins. Society*, 34 Or. 228 (1898), a pre-code decision from 1898 that addressed the elements needed to establish an insurance contract in "cases where a parol contract of insurance is relied upon." *Cleveland Oil*, 34 Or. at 234.

parties contracted can be determined." *United Pac. Ins. Co.*, 273 Or. at 290. In particular, a binder need not "state the premium because the agreement . . . to pay the regular insurance premium is sufficient consideration." *Id.*

Here, the Amended Complaint alleges to following. In June 2014, plaintiffs met with Bronson and "purchased insurance coverage sufficient to fully insure Plaintiff's business operations, assets and [the] Redigers' home." Am. Compl. ¶ 14. The coverage included liability and property insurance for "certain structures, scheduled farm vehicles, and farm personal property including all the TMR machinery." *Id.* And Bronson agreed to fully insure plaintiffs "within sufficient limits for liability exposure and to allow replacement of Plaintiffs' real or personal property in the event of a total loss from perils such as fire." *Id.* ¶ 15. Plaintiffs gave Bronson a $5,000 check "to cover the first six (6) months of this new insurance that [Country Mutual], through its agent, Bronson, agreed to provide." *Id.* ¶ 16. This is enough, under federal pleading standards, to allege the existence of an oral binder in June 2014.

Country Mutual also argues that plaintiffs cannot prove the existence of an oral binder, but plaintiffs point to evidence of the elements of an oral binder, including in the insurance application, Bronson and Jered Rediger's deposition testimony, and Jered Rediger's declaration. The Court agrees that these materials provide sufficient information for a reasonable jury to determine the coverage that the parties contracted for.

Next, Country Mutual argues that any oral binder had expired by the time of the fire. According to Country Mutual, binders "last only for 90 days and can only be extended by the Insurance Commissioner." Reply at 10–11. ORS 742.043(2) provides "within 90 days after issue of a binder a policy shall be issued in lieu thereof, including within its terms the identical insurance bound under the binder and the premium therefor." In *Hansen v. W. Home Ins. Co.*, 89 Or. App. 68 (1987), the Oregon Court of Appeals observed that this provision "does not invalidate a binder after 90 days, but puts an affirmative obligation on the insurer to provide a policy within 90 days that conforms to the binder." *Hansen*, 89 Or. App. at 72 (discussing *former* ORS 742.075(2), *renumbered as* ORS 742.043(2) in 1989). The *Hansen* court contrasted the current text of the provision with an older version, which expressly provided: "No binder shall be valid beyond the issuance of the policy with respect to which it was given, or beyond 90 days from its effective date, whichever period is shorter." *Id.* Thus, an oral binder could govern the insurance policy at the time of the fire, even though the fire happened more than 90 days after the alleged oral binder took effect.

Finally, Country Mutual argues that, under *Avemco Ins. Co. v. Hill*, 76 Or. App. 185 (1985), plaintiffs' remedy is limited to reformation, which plaintiffs did not plead in their Amended Complaint. Reply at 11–12. In *Avemco*, the Oregon Court of Appeals held that "[i]f the coverage under the binders did not conform to the contracting parties' intent, plaintiff's proper remedy was reformation" of the binders. *Avemco*, 76 Or. App. at 189. But here, plaintiffs allege that the oral binder *does* conform to their contractual intent and that the written policy fails to conform to the

Page 8 – OPINION AND ORDER

binder. Under Oregon law, an insurance policy must be construed to conform to the binder. ORS 742.043(1); *Hansen*, 89 Or. App. at 72 (observing that the plain language of ORS 742.043 "requires that the policy be construed to contain the coverage which defendant omitted in the policy but agreed to in the binder"). Thus, plaintiffs may pursue a breach of contract claim based on their alleged oral agreement with Bronson without pleading reformation. *See Hansen*, 89 Or. App. at 73 ("Because we construe the policy to contain the coverage agreed to under the binder, plaintiff does not need to reform the policy to maintain an action for breach of contract.").

Turning back to Country Mutual's initial arguments concerning the oral agreement between Bronson and the Redigers, Oregon's parol evidence rule, ORS 41.740, provides that "[w]hen the terms of an agreement have been reduced to writing by the parties, it is considered as containing all those terms, and therefore there can be . . . no evidence of the terms of the agreement, other than the contents of the writing[.]" Because plaintiffs alleged that an oral binder existed but had *not* been reduced to writing by the time of the fire, the parol evidence rule does not apply to this claim. And, applying the parol evidence rule in this context would conflict with the requirement, under Oregon law, that insurance policies be construed to conform to the binder. Oregon's statute of frauds, ORS 41.580, provides in relevant part that "[a]n agreement that by its terms is not to be performed within a year from the making" is void unless it is in writing. ORS 41.580(1)(a). Plaintiffs' evidence indicates that the Redigers and Bronson agreed to an annual term for the insurance policy, thus, the policy could "be performed within a year from the making."

Additionally, binders "shall be deemed to include all the usual terms of the policy as to which the binder was given." ORS 742.043(1). AgriPlus policies like plaintiffs' may be cancelled by the insured at any time. Gower Decl. (doc. 100) Ex. 1 at 49. Even a contract that is "otherwise to continue for more than a year" falls outside the prohibition of the statue of frauds if it is "by its own terms subject to termination within a year[.]" *Frontier Ins. Agency, Inc. v. Hartford Fire Ins. Co.*, 262 Or. 470, 483 (1972).

In sum, the Court agrees with plaintiffs that (1) they sufficiently alleged breach of an oral insurance binder, (2) questions of fact preclude summary judgment in Country Mutual's favor concerning the existence of the binder and the statute of frauds issue, and (3) the parol evidence rule would not prohibit the binder. Country Mutual's additional grounds for summary judgment presume that the written policy alone governs plaintiff's claim. But courts in Oregon must construe insurance policies to conform to any oral binders. Thus, questions of fact also preclude summary judgment on those grounds.

## CONCLUSION

For the reasons above, Country Mutual's Partial Motion for Summary Judgment (doc. 93) is DENIED.

IT IS SO ORDERED.

Dated this  19th  day of May 2021.

            /s/Ann Aiken            
Ann Aiken
United States District Judge