IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JARED REDIGER; MYRANDA REDIGER; HAYSTORM HARVESTING & FIBER, INC., | Civ. No. 6:16-cv-02263-AA |
| Plaintiffs, | **OPINION & ORDER** |
| v. | |
| COUNTY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

AIKEN, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Summary Judgment. ECF No. 120. The Court concludes that this matter is appropriate for resolution without oral argument. For the reasons set forth below, the motion is DENIED.

## LEGAL STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

### I. The Loss Event

Plaintiff Haystorm Harvesting & Fiber, Inc. is a business owned by Plaintiffs Jared and Myranda Rediger. In June 2014, the Redigers met with Third-Party Defendant Bob Bronson, an insurance agent for Defendant and Third-Party Plaintiff Country Mutual Insurance Company ("Country"), to apply for insurance coverage for their business property in Linn County, Oregon. Plaintiffs filled out an insurance application and gave Bronson a $5,000 check as a down payment on the premium for the intended policy.

On December 6, 2014, a fire caused significant damage to Plaintiffs' property. At the time of the fire, Bronson had not submitted the application or down payment check to Country and Country had not issued a written policy.

## II. The TMR Machine

Among the property destroyed by the fire was a "total mix ration" or "TMR" operation. The TMR machine was constructed by the Plaintiffs from parts that were commercially available, although the machine itself is not manufactured commercially. Spooner Decl. Ex. 2, at 6. ECF No. 125. Mr. Rediger testified that the entire TMR operation consisted of a power source; an enclosure with power controls; a hydraulic power unit; feed belts; four feeder tables; a mixer; two scaled hoppers; a baler; an accumulator; two chaff return belts; augers; a bulk bin; mounting and walkways; a control room; lighting; electrical motors; and support rigs. Spooner Decl. Ex. 11, at 5-7.

## III. The Application and the Post-Loss Policy

In their application, Plaintiffs sought coverage for Farm Personal Property ("FPP") including $350,000 for "TMR Machine," and $510,000 for "TMR Equip." Gower Decl. Ex. 2, at 9,11. ECF No. 121. When Bronson took Plaintiffs' insurance application, he included the TMR operation, although he testified that he did not know the meaning of the term "TMR." Spooner Decl. Ex. 4, at 4. When he was asked in his deposition if the TMR operation was to be included, Bronson answered "Not as a separate. It was just the machinery was on there. It is not identified as TMR

machinery." *Id.* at 5. In total, Plaintiffs sought blanket coverage for $1,318,000. Gower Decl. Ex. 2, at 11.

After the fire, Country issued Policy No. A36L4955907 (the "Post-Loss Policy") which was backdated to be effective at the time of the fire. Gower Decl. Ex. 1, at 1-2.

As relevant to the present motion, the Post-Loss Policy provided two different categories of coverage for Farm Personal Property—Scheduled FPP and Blanket FPP. The distinction is significant because the Blanket FPP coverage provided by the Post-Loss Policy does not include "[p]roperty that is separately described and specifically insured by this or any other insurance." Gower Decl. Ex. 1, at 35. In other words, if an item is specifically covered under the Scheduled FPP, it cannot be covered by the Blanket FPP.

The Post-Loss Policy included the "TMR Machine" in the Scheduled FPP with a liability limit of $350,000. Gower Decl. Ex. 1, at 5. The Post-Loss Policy also included a limit on liability for FPP of $1,318,000. *Id.* at 4.

Jennifer Reid was the underwriter for the Post-Loss Policy. Spooner Decl. Ex. 6, at 4. In her deposition, Reid testified that she did not know the difference between TMR Equip and TMR Machine, or what the components of each were, but she understood that TMR Machine was meant to be included as Scheduled FPP while TMR Equip was to be unscheduled Blanket FPP. Spooner Decl. Ex. 6, at 6-7. Reid did not speak with Bronson about the difference between TMR Machine and TMR Equip, but she based her understanding that the two were distinct on the fact that they were listed in the application with different values. *Id.* at 8-9.

Confusion arose, however, because the Scheduled FPP listed the TMR Machine at $350,000 and four feeder tables each listed at $40,000 and so the total value of the TMR Machine and the feeder tables combined was $510,000, the same value as the "TMR Equip" listed in the Blanket FPP. Spooner Decl. Ex. 10. Country's agents became concerned that, rather than there being two categories of TMR-related property separately listed in the Scheduled FPP as "TMR Machine" and in the Blanket FPP as "TMR Equip," there was only one set of TMR-related property that had been listed in both categories. *Id.*

Tim Ekberg testified that he sought clarification from Bronson on what the TMR machine was. Spooner Decl. Ex. 8, at 5. Ekberg also sought clarification on what, among the items claim under the Post-Loss Policy, was meant to be part of the TMR machine, as opposed to the TMR equipment. *Id.* at 7. Ekberg testified that Bronson told him that all TMR-related items were meant to be scheduled and that the TMR-related items were not intended to be included in both the Scheduled FPP and the Blanket FPP. *Id.* at 8-9.

Charlie Strube also participated in the meeting with Bronson where he and Ekberg sought clarification about whether the TMR-related items were meant to be scheduled or unscheduled under the Post-Loss Policy. Spooner Decl. Ex. 9, at 5. Strube testified that Bronson told them that they did not intend for the TMR-related items to appear in both the Scheduled FPP and the Blanket FPP and that all TMR-related property was meant to be included in the Scheduled FPP. *Id.* at 6-7.

As a result, Country did not issue payment for the TMR materials under the Blanket FPP of the Post-Loss Policy.

## IV.  Procedural History

Plaintiffs brought this action for breach of contract against Country. Country, in turn, brought a third-party complaint against Bronson. ECF No. 16. During the pendency of this action, Bronson suffered a stroke which caused memory loss and left Bronson unable to complete depositions. ECF Nos. 84, 88. Country and Bronson were subsequently able to reach a settlement of the third-party claims. ECF No. 95.

In May 2021, the Court denied Country's motion for summary judgment. ECF No. 116. In its Order, the Court found that Plaintiffs had sufficiently alleged the existence of an oral insurance binder and that the parole evidence rule did not prohibit the binder. The Court also found that questions of fact precluded summary judgment concerning the existence of the binder and on the application of the statute of frauds.

## DISCUSSION

The dispute at the heart of this motion concerns whether the Scheduled FPP item "TMR Machine" includes all TMR components or only a portion of the components. If "TMR Machine" refers to the entirety of the TMR components, then the Post-Loss Policy does not permit coverage for the balance of the claimed value of "TMR Equip" under the Blanket FPP coverage.

Plaintiffs also assert that Country waived its right to dispute the actual cash value ("ACV") and replacement cash value ("RCV") of the TMR materials because its

adjuster, working with Plaintiffs' adjuster, submitted a request for authority to pay the claimed value of the TMR material.

Before advancing to the substance of the motion, the Court must resolve an evidentiary objection raised by Plaintiffs. Plaintiffs object to portions of the depositions of Tim Ekberg, Spooner Decl. Ex. 8, and Charlie Strube, Spooner Decl. Ex. 9, in which those witnesses recount discussions they held with Bronson in September 2015 concerning whether the TMR material was intended to be scheduled only or both scheduled and unscheduled. Plaintiffs also object to an activity log note created by Strube on September 16, 2015 in which Strube recounts the substance of his discussion with Bronson concerning whether the TMR material was intended to be scheduled or unscheduled. Spooner Decl. Ex. 10. Plaintiffs contend that these exhibits contain inadmissible hearsay not covered by any exception.

Country responds that the Ekberg and Strube testimony is admissible because Bronson in an unavailable witness, as well as a party opponent to Country, and that the activity log is admissible as a business record.

The Court will first address the issue of whether the testimony is admissible under the unavailable witness exception to the bar on hearsay evidence. Bronson was initially deposed by the Plaintiffs' counsel on August 30, 2017. Gower Decl. Ex. 7. In that deposition, Bronson testified that he and Plaintiffs intended some of the TMR material to be scheduled and some to be unscheduled under the planned policy. *Id.* at 20, 25. The August 30, 2017 deposition ended at 2:50 p.m. with an understanding between the parties that the deposition would be left open for another

session during which Country's counsel would have an opportunity to question Bronson for a few hours. Second Spooner Decl. Ex. 1, at 4-5. ECF No. 134.

The parties reconvened to resume deposing Bronson on March 8, 2018. Second Spooner Decl. Ex. 2. In the months between the first and second sessions, Bronson suffered a serious stroke which caused him to experience memory loss. *Id.* at 4-5. Among other things, Bronson could not remember when he transmitted Plaintiff's insurance application to Country, including whether he did so before the fire. *Id.* at 6-7. The parties agreed that Bronson's medical condition did not permit him to continue with the deposition and the session ended. *Id.* at 7-8.

The matter was put before this Court, which conducted an *in camera* review of Bronson's medical records before concluding that Bronson was unable to provide deposition testimony as a result of his condition. ECF Nos. 84, 88.

Federal Rule of Evidence ("FRE") 804(a) provides that a declarant is considered unavailable as a witness if he (1) "testifies to not remembering the subject matter" or (2) "cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness." Fed. R. Evid. 804(a)(3), (4). Bronson, who suffered memory loss from a stroke, qualifies as "unavailable" under both of these subsections.

Under FRE 804(b), the Rules provide categories of testimony that are not excluded by the rule against hearsay in the case of an unavailable declarant. These categories are (1) former testimony; (2) statements made under the belief of imminent death; (3) statements against interest; (4) statements of personal or family history;

and (5) statements offered against a party that wrongfully caused the declarant's unavailability. Fed. R. Evid. 804(b). Of these, Country relies on FRE 804(b)(3), which covers statements against interest. Such a statement is one that

> a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability . . .

Fed. R. Evid. 804(b)(3)(A).

Here, Ekberg and Strube testified that Bronson told them that the TMR equipment was meant to be scheduled only and not included in both the Scheduled and Blanket FPP coverage. This is contrary to what he later testified in his pre-stroke deposition. The statements Bronson allegedly made to Ekberg and Strube, if actually made, would be contrary to Bronson's interest if the original intent of the policy was, as Plaintiffs claim and as Bronson later testified, to include the TMR machine in both Scheduled FPP and Blanket FPP because Bronson would have understood that Country would act in accordance with what he told Ekberg and Strube and that the denial of coverage would result in civil litigation in which Bronson himself might be named as a defendant. This is, in fact, what ultimately occurred when Country declined to provide Blanket FPP coverage for the TMR material, which led to Plaintiffs bringing this action against Country and Country, in turn, bringing a third-party complaint against Bronson. The Court concludes, therefore, that Ekberg and Strube's testimony about what Bronson allegedly told them concerning the TMR coverage is admissible under the hearsay exception for an

unavailable witness. It is not, therefore, necessary to determine if it would also be admissible as an admission by a party opponent.

Turning to the activity log entry memorializing what Bronson told Strube and Ekberg, Country asserts that this is admissible as a business record. Plaintiffs assert that, even accepting that the log entry is a business record, it contains hearsay-within-hearsay and so remains inadmissible. Records of regularly conducted activity are admissible if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Here, Plaintiffs object that the activity log does not represent a "contemporaneous" record of the meeting with Bronson, based on testimony that none of the participants in that meeting took notes. This goes beyond the requirements of the Rule 803, however, which do not demand that the record be contemporaneous, only that it be made "at or near the time by—or from information transmitted by—someone with knowledge." A post-meeting memorialization made near in time to the meeting by one of the participants is sufficient to meet this standard. The Court concludes that the activity log meets the requirements for the business record

exception. And, because Bronson is an unavailable witness under FRE 804, the Court likewise rejects Plaintiffs' "hearsay-within-hearsay" argument.

In sum, the Court concludes that the challenged portions of the Ekberg deposition and the Strube deposition are admissible, as is the activity log memorializing Strube's discussions with Bronson. Plaintiffs' evidentiary objections are overruled.

Having resolved the evidentiary issue, the Court turns to the substantive question of whether the TMR material was intended to be included only under the Scheduled FPP or under both the Scheduled FPP and the Blanket FPP. The Court observes that Bronson gave contradictory information in his statements to Ekberg and Strube and in his subsequent and incomplete deposition testimony. This contradiction must be resolved by the trier of fact. The Court concludes that material questions of fact exist, which precludes the grant of summary judgment in favor of Plaintiffs.

In the Court's previous Order denying Country's Motion for Summary Judgment, the Court concluded that there were questions of fact concerning the binder that necessitated that the finder of fact "determine the coverage that the parties contracted for." Opinion & Order, at 7, 10. Those questions of fact continue to exist and must be resolved by the trier of fact.

Finally, the Court turns to Plaintiffs' claim that Country has waived the right to contest that the value of the unpaid TMR components is less than $774,780 RCV or $736,041.30 ACV. "Waiver is the intentional relinquishment or abandonment of a

known right or privilege." *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or. 235, 240 (1993). Plaintiffs assert that because Country's adjuster worked with Plaintiffs' adjuster to assess the RCV and ACV of the TMR materials and that Country's adjuster requested permission to pay $736,041.30 in ACV for TMR material which had $774,780 RCV under the Blanket FPP of the Post-Loss Policy, Country has therefore waived the right to contest the values identified by the adjusters. The Court concludes that the actions of Country's adjuster do not demonstrate the intentional relinquishment of Country's right to contest that value and so declines to grant summary judgment in Plaintiffs' favor on the issue of waiver.

The Court therefore DENIES Plaintiffs' Motion for Summary Judgment.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment, ECF No. 120, is DENIED.

It is so ORDERED and DATED this ___30th___ day of November 2022.

        /s/Ann Aiken
        ANN AIKEN
        United States District Judge